IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DEWAYNE NOBLE BANKS, )
)
     Petitioner, )  Case No. CV-02-397-S-BLW
)
vs. )  **MEMORANDUM ORDER**
)
IDAHO STATE CORRECTIONAL )
INSTITUTION; DAVE PASKETT, )
WARDEN, )
)
     Respondent. )
_____ )

   This case was reassigned to this Court for consideration of all pending motions,

including the following: Respondent's Motion for Partial Summary Dismissal (Docket

No. 32), Petitioner's Motion to Expand the Record (Docket No. 34), Petitioner's Motion

for Disclosure (Docket No. 35), and Petitioner's Motion for Evidentiary Hearing (Docket

No. 41).  Having reviewed the record in this case, as well as the state court record, the

Court concludes that oral argument is not necessary.  Accordingly, the Court enters the

following Order.

## I.

## MOTION FOR PARTIAL SUMMARY DISMISSAL

**A.  Background**

**MEMORANDUM ORDER - 1**

After a jury trial in the Third Judicial District Court of the State of Idaho, with the

Honorable James C. Morfitt presiding, Petitioner was convicted of robbery.  He also was

charged with and pled guilty to being a persistent violator.  *See State's Exhibit A-1*, at p.

101.  Petitioner was represented at trial by appointed counsel John Prior.

The facts of the case were described as follows by the Idaho Court of Appeals:

> On the evening of November 11, 1999, Banks and his female companion, Joni Roa-Shaffer, went to a bar.  Roa-Shaffer began drinking with the victim in this case [Jackson Allred].  Approximately one hour later, Roa-Shaffer suggested that she and the victim return to her motel room to have sex.  The two left the bar and began walking.  Banks pulled up in his vehicle, and Roa-Shaffer and the victim got in.  Roa-Shaffer sat on the victim's lap in the front seat.

> Banks asked the victim if he had any money, and the victim stated he did not but offered to withdraw some from an ATM.  Banks drove to an alleyway behind a grocery store and stopped the vehicle.  Banks exited the vehicle and walked to the passenger side.  Banks then opened the passenger-side door and grabbed the victim's wallet out of his back pocket.  The victim pushed Roa-Shaffer off his lap and lunged at Banks, knocking the wallet out of Banks's hand.  The victim and Banks began wrestling on the ground.  The victim lost consciousness after he was struck in the back of the head with an unknown object by, he believed, Roa-Shaffer.  When the victim came to approximately one and a half hours later, his wallet was missing.  The victim later received his wallet in the mail.

*State's Exhibit B-3*, at pp. 1-2.

During the sentencing phase of his criminal case, Petitioner was represented by

appointed counsel Warren Trunnell.  After a hearing, Judge Morfitt sentenced Petitioner

to a fixed term of ten years and an indeterminate life term.

**MEMORANDUM ORDER - 2**

Petitioner was next represented by appointed counsel Klaus Wiebe on a Rule 35 motion for reduction of sentence.  Petitioner's motion was unsuccessful.

Petitioner then filed a direct appeal through appointed counsel Paul Sonenberg. The Idaho Court of Appeals heard Petitioner's case and affirmed his conviction and sentence.  The Idaho Supreme Court denied his petition for review.  *See State's Exhibits B-1 through B-7.*

Petitioner filed his federal Petition for Writ of Habeas Corpus on August 22, 2002. *See Original Petition* (Docket No. 4).  The Court stayed this action while Petitioner returned to state court to file a post-conviction action.  *See Order of June 25, 2003* (Docket No. 13).

Upon his return to state court, Petitioner sought appointment of counsel in the post-conviction matter.  The state court appointed Klaus Wiebe again, but Wiebe had a conflict because Petitioner alleged that Wiebe had acted ineffectively in pursuing the earlier Rule 35 Motion.  Attorney Van Bishop was appointed.  Petitioner then filed a motion to disqualify Bishop, based on Petitioner's allegation that in Petitioner's prior rape case, Bishop, who was his appointed trial counsel, had acted ineffectively.  The state district court did not appoint another counsel nor did it inquire into whether Bishop was going to act on Petitioner's behalf.  Bishop filed nothing on Petitioner's behalf.  The state district court adjudicated the post-conviction petition with Petitioner acting pro se and eventually dismissed the case.  *See State's Exhibits C-1 and C-2.*

**MEMORANDUM ORDER - 3**

Appointed counsel Dennis Benjamin represented Petitioner on appeal of the post-conviction matter.  Petitioner's appeal was dismissed on procedural grounds.  *See State's Exhibits D-1 through D-10.*

After the post-conviction action, Petitioner filed two petitions for writs of mandamus with the Idaho Supreme Court.  Those actions were unsuccessful.  *See State's Exhibits E-2 through F-8.*

After Petitioner's final state court action was completed, this Court permitted Petitioner to re-open his federal habeas corpus case and file an amended petition.  *See Order of August 16, 2005* (Docket No. 25).  In his Amended Habeas Corpus Petition (Docket No. 26), Petitioner brings 24 different claims, and in his Motion for Supplemental Pleadings he brings two additional claims, for a total of 26 claims.

Respondent now seeks partial summary dismissal on procedural default grounds as to the following claims presented in the state post-conviction action: 2-18, 20, 21, and 24. The Court previously determined that no response was necessary to Claims 1, 22, and 23, because the claims were not cognizable claims for relief.  Supplemental Claim 1 is not at issue in this motion, as it appears to have been properly exhausted on direct appeal.  *See State's Exhibits B-3 and B-4.*   Claim 19 is also not at issue in Respondent's current Motion to Dismissal.

**B.     Standard of Law for Summary Dismissal and Procedural Default**

**MEMORANDUM ORDER - 4**

In order to have a habeas corpus petition heard in federal district court, a petitioner must allege that he is held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a). Upon receipt of such a petition, a federal district court is required to review the petition to determine whether it is subject to summary dismissal.  Summary dismissal is appropriate where "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4 of the Rules Governing § 2254 Cases.

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition.  28 U.S.C. § 2254(b).  To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim.  28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court, and there are no remedies now available.  *O'Sullivan*, 526 U.S. at 848.  A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but

**MEMORANDUM ORDER - 5**

the state court rejected the claim on an independent and adequate state law procedural ground.  *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991).

"'In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.'"  *Martinez v. Klauser,* 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).  Particularly, the *Martinez* Court explained that when there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to [state] law," such a decision does *not* rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may *not* be applied to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action.  *Id. See also Lee v. Kemna*, 534 U.S. 362 (2002) (holding that the Missouri court's enforcement of its rule requiring motions for a continuance to be in writing was not adequate to bar federal review because the petitioner substantially complied with the rule and enforcement of the rule served no real governmental interest).

Determining whether a rule is adequate and independent involves a burden-shifting process. In *King v. Lamarque*, – F.3d –, 2006 WL 2684539 (9th Cir. 2006), the Ninth Circuit Court explained:

> Once the government has pleaded "the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner." [*Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003)]. The petitioner "may satisfy this burden by

**MEMORANDUM ORDER - 6**

asserting specific factual allegations that demonstrate the inadequacy of the
state procedure, including citation to authority demonstrating inconsistent
application of the rule." *Id.* The burden then shifts back to the government,
and it bears "the ultimate burden of proving the adequacy" of the
relied-upon ground. *Id.* at 585-86.

*Id.* at *2.

A claim that was dismissed in state court prior to being heard on the merits as a

result of an adequate and independent state procedural bar will not be heard in federal

court unless the petitioner shows either that there was legitimate cause for the default and

that prejudice resulted from the default, or, alternatively, that the petitioner is actually

innocent and a miscarriage of justice would occur if the federal claim is not heard.  *Id.*

C.    **Discussion of Procedural Default**

Petitioner filed a post-conviction action in state court in which it appears that he

presented Claims 2-18, 21, and 24.  *See State's Exhibit C-1*, at p. 3.  The state district

court entered an "order of partial dismissal and notice of intent to summarily dismiss

remaining claims."  *See State's Exhibit C-2*, at p. 286.  Petitioner prematurely filed a

notice of appeal.  *See id.* at p. 310.  The state district court later entered an order of

dismissal as to all remaining claims.  *See id.* at p. 342.  The state court then ordered

appointment of a state appellate public defender for the appeal.  *See id.* at p. 345.

On appeal, the State filed a motion to dismiss, arguing that Petitioner had not filed

a notice of appeal from the state district court's *final* order, depriving the appellate court

**MEMORANDUM ORDER - 7**

of jurisdiction.  *See State's Exhibit D-2*.  The Idaho Supreme Court agreed, and dismissed the appeal.  *State's Exhibit D-5*.

Respondent argues that, as a result of the dismissal, Claims 2-18, 21, and 24 are procedurally defaulted because Petitioner failed to properly bring them in the state appellate courts.  Petitioner counters that the state court's dismissal is not an adequate state procedural bar.

Petitioner argues that Idaho Appellate Rule 17(e)(2) should have been applied to save his claims from dismissal.  That Rule provides:

> *Premature Filing of Notice of Appeal*. A notice of appeal filed from an appealable judgment, order or decree before formal written entry of such document shall become valid upon the filing and the placing the stamp of the clerk of the court on such appealable judgment, order or decree, without refiling the notice of appeal.

Idaho Appellate Rule 17(e)(2) was discussed in *Meridian Bowling Lanes v. Meridian Athletic Association, Inc.*, 670 P.2d 1294 (Idaho 1983).  There, the state district court had resolved all motions for summary judgment but had not entered final orders as to them when the appellant filed the notice of appeal.  The Idaho Supreme Court determined that, "in the interests of judicial economy and being cognizant of amended I.A.R. 17(e)(2)," the notice of appeal filed January 20, 1981, was cured when the two formal judgments were entered."  *Id*. at 1296.  Key to its determination was the fact that "[e]xcept for the formal written judgments entered April 22, 1981, all claims involved in the case were resolved prior to the January 20, 1981, Notice of Appeal."  *Id.*

**MEMORANDUM ORDER - 8**

In *Hawley v. Green*, 860 P.2d 1 (Idaho Ct. App. 1993), the Idaho Court of Appeals opined that I.A.R. 17(e)(2) "applies only in situations where the court has orally ruled, thereby indicating the outcome, the notice of appeal is then filed, and the court subsequently enters a written order or judgment consistent with its earlier indication." *Id.* at 4.  In *Hawley*, the plaintiff filed a notice of appeal after summary judgment was entered in favor of Defendant Matheson but before summary judgment was entered as to Defendant Green.[1]  The *Hawley* Court held that the notice of appeal did not save the plaintiff's appeal from being dismissed as to Defendant Green.

The difference between Petitioner Banks' case and *Meridian Bowling Lanes* is that Banks filed the notice of appeal after the state court dismissed only *some* of the claims but indicated that it intended to dismiss the remainder of the claims at a later date (*State's Exhibit C-2*, at p. 286), and in *Meridian Bowling Lanes*, *all* of the claims had been orally dismissed prior to the filing of the notice of appeal.  Petitioner's case is more like *Hawley*, where the court disallowed an appeal as to any claims that were unresolved at the time the notice of appeal was filed.  Petitioner has cited to no instance where the Idaho courts have allowed I.A.R. 17(e)(2) to retroactively include claims not finally decided (either orally or by written order without judgment) at the time the notice of appeal was filed.

---

[1]  The *Hawley* order awarding summary judgment in favor of Defendant Matheson was not final because it was not certified under I.R.C.P. 54(b).  It became final for purposes of appeal after the court resolved all remaining claims under I.A.R. 17(e)(2).  See 860 P.2d at 5.

**MEMORANDUM ORDER - 9**

Based on this case law, Petitioner Banks has a persuasive argument, however, that the claims dismissed in the "order of partial dismissal" were properly appealable. These include the following, as noted by the state district court:

1. Ineffective assistance of counsel as to Mr. Trunnell, Mr. Sonnenberg, and Mr. Wiebe.
2. Faulty presentence investigation report.
3. A request for discovery to compare the tape recording of the trial to that of the reporter's transcripts.
4. That certain State witnesses perjured themselves in the underlying criminal action.
5. Subornation of perjury by Ms. Virginia Bond.
6. Perjury at the sentencing.
7. Prosecutorial misconduct as to Ms. Virginia Bond.
8. Violation of the United States Constitution and Federal Law.
9. Discrimination.
10. False Statement.

*State's Exhibit C-2*, at p. 297.

The precedent cited above supports the argument that the premature notice of appeal as to these claims was "cured" by the final order of dismissal entered on September 30, 2003. Therefore, the Court finds and concludes that the state procedural bar as to these claims was not adequate, because the decision appears "contrary to [state] law." *Martinez*, 28 F.3d at 1010. As a result, Petitioner can proceed unless another procedural bar prevents him from doing so. It appears that the claims upon which he can proceed are Amended Habeas Corpus Petition Claims 9, 10, 11, 12, 17, 18, and 20.

On the other hand, those claims that were *not* final before Petitioner filed his notice of appeal *are* procedurally barred in an adequate manner, as supported by the case

**MEMORANDUM ORDER - 10**

law.  These claims are Petitioner's Amended Habeas Corpus Petition Claims 2, 3, 4, 5, 6, 7, 8, 13, 14, 15, 16, and Supplemental Claim No. 4.

Petitioner argues that an amended notice of appeal filed nine months after the final order was issued "relates back" to the original notice, rendering all remaining claims exhausted.  The Court disagrees, because the claims sought to be added in the amended notice of appeal were not finally resolved at the time of the first notice of appeal, as in *Hawley*.

Petitioner relies on Idaho Rule of Appellate Procedure 17(l), which provides:

> In the event the original notice of appeal erroneously states any of the information and requirements of this rule or additional facts arise after the filing of the initial notice of appeal, the appellant may thereafter file an amended notice of appeal correctly setting forth the facts and information. The amended notice of appeal shall indicate changes from the original notice of appeal by means of strikethroughs and underlining. An amended notice of appeal shall be filed with the clerk of the district court in the same manner as the original notice of appeal but no filing fee shall be required. If the original notice of appeal was timely filed from an appealable judgment, order or decree, the amended notice of appeal will relate back to the date of filing of the original notice of appeal.

It is clear that this provision does not apply to Petitioner's case, where he is attempting to add new claims that were later made final by a different order other than the one appealed from in the original notice of appeal.  Petitioner was not attempting to correct information or add additional facts; he was attempting to add new claims made final in a different order.  There is no provision in I.A.R. 17(l) for Petitioner's situation. There is no indication in the rule or in case law that a litigant can evade the timeliness bar

**MEMORANDUM ORDER - 11**

discussed in *Meridian Bowling Lanes* and *Hawley* simply by filing an amended notice of appeal. Rather, if a petitioner files a premature notice that covers only those claims resolved as of that time, he must later file a *timely* notice of appeal when the remaining issues are resolved. The amended notice of appeal in Petitioner's case cannot relate back to the original notice because the claims sought to be added were not final when the original notice was filed.

Petitioner also argues that the time in which to file a notice of appeal was tolled because the district court did not provide an explicit ruling on each and every issue set forth in his Rule 59(e) motion to alter or amend the judgment, filed on August 14, 2003, several days after the state court issued its order of partial dismissal. Because there was no "judgment" at that time, such a motion was improper, and Petitioner cannot rightly demand that the state court address a improper motion and that the improper motion be the basis for equitable tolling in this action.

Further, in its October 1, 2003 order, the state court implicitly denied the motion when it noted that "a careful review of Petitioner's pro se filings reflects that Petitioner's additional and renewed motions fail to provide the Court with new evidence that precludes summary dismissal of the remaining allegations in Petitioner's application for post-conviction relief for the reasons previously set forth and fully dismissed." Even though the state court did not mention the previously dismissed claims in this statement,

**MEMORANDUM ORDER - 12**

this Court concludes that the denial of the motion implicitly affirmed denial of all previously dismissed claims as well.

Because Petitioner's amended notice of appeal was not filed until July 6, 2004, nine months after the final order, it was untimely.  This Court further rejects any of Petitioner's other arguments made in his briefing that are not specifically discussed in this Order.

This Court also notes that Petitioner voluntarily dismissed Claim 21 – that counsel Paul Sonenberg was ineffective on appeal – in his response to the notice of intent to issue summary dismissal in the post-conviction action.  *See State's Exhibit C-2*, at pp. 266 & 289-90. Therefore, it was not considered by the state courts, and it is procedurally defaulted for failure to fairly present it.

**D.     Standard of Law Governing Cause and Prejudice to Excuse Procedural Default**

Petitioner cannot proceed on the claims the Court has identified as procedurally defaulted for failure to file a timely notice of appeal unless he shows cause and prejudice or actual innocence.  The Court will first consider cause and prejudice.  To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and

**MEMORANDUM ORDER - 13**

substantial disadvantage, infecting his entire [proceeding] with errors of constitutional

dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

**E.      Discussion of Petitioner's Arguments re: Cause and Prejudice**

      1.      <u>Failure to appoint counsel in state post-conviction action</u>

      Petitioner asserts as cause for the default of his other claims that Judge Morfitt

found that appointment of counsel was appropriate in his case under the post-conviction

statute and appointed counsel, but that the judge did not follow through when appointed

counsel did nothing on the case, and that the judge did not address Petitioner's pro se

motion to appoint a conflict-free counsel.

      Generally, the error of post-conviction counsel cannot serve as cause for the

default of claims because there is no constitutional right to a post-conviction review

process. *Poland v. Stewart*, 169 F.3d 573, 588 (9th Cir. 1999); *see also Bonin v. Vasquez*,

999 F.2d 425, 430 (9th Cir. 1993).  The issue in this case is slightly different – whether

cause can be shown where a state court fails to appoint new counsel in an instance where

the petitioner has asserted a conflict of interest exists and where appointment of counsel

was required by state statute.  Having considered the issue, the Court concludes that

because the Constitution does not require counsel at that stage, *Poland v. Stewart*

governs, and the lack of counsel – or the failure to appoint counsel where counsel is not

**MEMORANDUM ORDER - 14**

required by the Constitution – cannot function as cause to excuse the default of Petitioner's claims.[2]

       2.     <u>Ineffective assistance of appellate counsel on post-conviction review</u>

Petitioner also asserts as a basis for "cause" that post-conviction appellate counsel failed to raise on appeal meritorious claims and issues that Petitioner presented in his post-conviction. This allegation does not provide a basis for "cause," because there is no constitutional right to a post-conviction review process or to counsel during post-conviction review.

       3.     <u>State court's failure to rule on particular claims in post-conviction action</u>

Petitioner also argues that the district court's failure to rule on some of Petitioner's specific claims on post-conviction review constitutes "cause" to excuse the default of his claims. To the contrary, the failure to address these claims did not cause the procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims.").

---

[2] The Court also finds this case distinguishable from *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000), where the Ninth Circuit held that an attorney conflict of interest can be cause when that conflict causes a petitioner to be denied access to habeas proceedings because the attorney purposely and actively interfered with his right to petition. In Petitioner's case there is no allegation that his counsel who allegedly had a conflict took any affirmative action to interfere with his court proceedings. *See also Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996) (defense counsel's ineffectiveness will constitute "cause," for purposes of justifying procedural default of habeas claims, only if it amounts to independent constitutional violation); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996)(rejecting argument that petitioner demonstrated cause by alleging that he was deprived of effective assistance of counsel during post-conviction proceedings because his counsel was not able to litigate his own alleged ineffectiveness).

**MEMORANDUM ORDER - 15**

This Court would have addressed any of those claims on the merits had Petitioner not procedurally defaulted them by failing to file a proper notice of appeal in state court, because so long as a petitioner raises the federal claims throughout the state court proceedings, then the purpose of exhaustion is met – to give the state court an opportunity to review the constitutional claims.  The failure of a state court to address claims that were properly presented to it does *not* result in a procedural bar.

However, Petitioner defaulted the non-addressed claims when he failed to file a second notice of appeal raising as issues (1) that the state district court failed to address the claims, or (2) that the state district court implicitly denied the non-addressed claims by its final denial of the entire post-conviction petition.  Had he done so, the claims would have been fairly presented and properly exhausted.  Based on the foregoing reasoning, Petitioner has not shown cause for the procedural default by this argument.

4.      Failure of state court to recuse itself

Petitioner also asserts that Judge Morfitt's failure to recuse himself from Petitioner's post-conviction case constitutes cause to overcome his procedural default. Petitioner fails to show how Judge Morfitt's refusal to disqualify himself from the post-conviction case "caused" Petitioner to default his claims.  Rather, it was Petitioner's failure to file a notice of appeal at the proper time that caused the default.

Stated another way, the focus of a showing of cause is to demonstrate that "some objective factor external to the defense impeded [petitioner's] efforts to comply with the

State's procedural rule." *Murray*, 477 U.S. at 488. "Government interference" can be an

appropriate basis for cause. *Id*. The state procedural rule at issue is Petitioner's failure to

file a timely notice of appeal from the final order of the post-conviction proceeding.

Therefore, Petitioner must show that the state court's failure to recuse itself caused

Petitioner's failure to file a timely notice of appeal. However, because Petitioner cannot

show that recusal was required, his "cause" argument fails.

 In confronting this issue in state court, Judge Morfitt noted as follows:

  On November 8, [2000], the matter was set for hearing on the
defendant's motion for judgment of acquittal and then for sentencing. Mr.
Banks appeared together with his counsel, together with Ms. Bond.
  At that time, Mr. Prior, Mr. Banks [sic] noted that according to the
Presentence Investigation Report, that I had previously prosecuted the
defendant. I was the Prosecuting Attorney. Based upon a copy of the
judgment and commitment signed by Judge Lodge and filed – I can't read
the date – on or about December of 1978, Case No. 4312.
  I thereafter reset the matter for sentencing on today's date for
hearing of defendant's motion for judgment of acquittal on today's date,
and for any other motions that might be filed. No additional motions have
been filed. I, following that hearing, did review the judgment commitment
from December 1978, which does reflect that I appeared, together with the
Deputy Prosecuting Attorney, Jeffrey Jones, apparently at the time of the
sentencing when the defendant was sentenced in that case.
  For the record, I was the Prosecuting Attorney for this County in
1978. I [have] no knowledge or any kind of recollection of this case
whatsoever. And until the matter was brought to my attention on November
8th at the prior hearing, I had no recollection of whatever [sic] that I had
ever had any dealings whatsoever with Mr. Banks.
  The court notes the sentencing in that case was on a plea of guilty in
accordance with the recitation of judgment of commitment. The Court
further notes that the defendant, following the return of the jury verdict in
this case, entered a plea admitting to the prior felony convictions and to
being a persistent violator.

**MEMORANDUM ORDER - 17**

One of the prior convictions was the 1978 case I just referenced.  I have no independent knowledge whatsoever of that case, recollection of Mr. Banks in that case, or any involvement in that case.  Apparently, I was present at sentencing in 1978, some 22 years ago.  And during the four years that I was Prosecuting Attorney for Canyon County, I handled numerous criminal matters, and with little recognition of any particular case and certainly not this one.

Mr. Banks admitted to the prior conviction.  The sentence in that case [was] on a plea of guilty.   So I don't believe under the applicable law, that I'm in any way disqualified from the sentencing of this case, nor has any motion to that [e]ffect been filed.  I want to put that on the record.

*State's Exhibit B-3*, at pp. 602-04.

Idaho Criminal Rule 25(b)(3) "Disqualification for Cause," provides, in pertinent part, that a party may move to disqualify a judge on grounds that the judge "has been an attorney or counsel for any party in the action or proceeding."  In *State v. Zamora*, 933 P.2d 106 (Idaho 1997), the Idaho Supreme Court held that I.C.R. § 25(b)(3) was not triggered by the fact that the judge had been the prosecuting attorney on one of  a defendant's prior cases.[3]  Based upon the law applied to the foregoing recitation of facts, this Court concludes that Petitioner has not shown that Judge Morfitt was required to

---

[3]  The *Zamora* Court explained:
The fact that the district judge was the prosecuting attorney in one of the cases alleged as the basis for the persistent violator charge does not allow Zamora to disqualify the district judge pursuant to I.C.R. 25(b)(3). A persistent violator charge is not a continuation of the prior felony cases upon which it is based, but is merely the procedure for imposing additional punishment on a person who is convicted for at least the third time of the commission of a felony. I.C. § 19-2514; *State v. Johnson,* 86 Idaho 51, 57, 383 P.2d 326, 329 (1963).
933 P.2d at 107.

**MEMORANDUM ORDER - 18**

recuse himself because the judge had been the prosecuting attorney at sentencing on Petitioner's unrelated criminal case 22 years earlier.  It is also important to note that Petitioner pleaded guilty to being a persistent violator in the present case and stipulated to admission of evidence of the earlier criminal conviction and sentence, and thus the earlier case was not a disputed issue in the present case.

Other courts have come to the same conclusion in similar circumstances.  In *Nichols v. Scott*, 69 F.3d 1255 (5th Cir. 1995), the court analyzed a situation where the judge who presided over Nichols's state habeas corpus case had also been the prosecutor in an earlier case against the petitioner.  In *Nichols*, the prior conviction (from 1980) had been put into evidence at the punishment stage of the present case at issue.  The Fifth Circuit Court of Appeals observed that "neither the validity of that conviction (and the related sentence) nor its use at Nichols' sentencing was in any way at issue in either Nichols' trial (or direct appeal) or in his state habeas proceeding (which commenced in 1989), or in this federal habeas."  *Id*. at 1276.  The court determined that state law would not have required recusal in this circumstance, and determined that the habeas corpus court properly accorded the state court findings of fact proper notwithstanding the accusation that the state habeas judge should have recused himself.  *See also U.S. v. Balistrieri*, 779 F.2d 1191 (9th Cir. 1985) (judge need not have recused himself where, ten years earlier, as state attorney general, he had conducted a vigorous campaign against Balistrieri, having stated in an affidavit, that he believed Balistrieri "was the head of the

**MEMORANDUM ORDER - 19**

Mafia Family in Wisconsin," but nothing in the record showed that the bias existed ten years later when he presided over Balistrieri's federal criminal case); *Del Vecchio v. Illinois Dept. of Corr.*, 31 F.3d 1363 (7th Cir. 1994) (recusal not required where judge had personally participated in prosecution of defendant for a murder fourteen years earlier).

Next, Petitioner asserts that Judge Morfitt's impartiality might reasonably be questioned by "his failure to conduct legal proceedings according to established rules and principles for the protection and enforcement of Mr. Banks' substantial and constitutional rights." Idaho Criminal Rule 25(b)(4) provides for disqualification for cause if the judge or magistrate is biased or prejudiced for or against any party or a party's case.

Petitioner cites several additional factual circumstances that allegedly demonstrate Judge Morfitt's bias. The Court will review each to determine whether they, considered individually or collectively, show a bias that would have required Judge Morfitt to recuse himself. These items are as follows: (1) the judge failed sua sponte to give a limiting instruction as to Roa-Shaffer's plea of guilty; (2) the judge failed to dismiss Mr. Prior and appoint new counsel prior to sentencing; (3) the judge appointed Van Bishop to represent Petitioner and did not do anything to disqualify him on Petitioner's later motion to disqualify and failed to inquire into the conflict of interest; (4) the judge stated, "nor has any motion to that [e]ffect been filed," referring to a motion to disqualify the judge; and (5) the judge solicited the State's view on impartiality and recusal. This Court will now

**MEMORANDUM ORDER - 20**

consider whether these items are sufficient to show that Judge Morfitt was biased against Petitioner such that recusal was required.

       *a.*      *The judge failed to give a limiting instruction as to Roa-Shafer's plea of guilty*

When addressing this issue on state post-conviction review, Judge Morfitt determined that nothing in Idaho law required that he give such a limiting instruction sua sponte. Petitioner had not objected to Roa-Shaffer's testimony and had not sought a limiting instruction. The Idaho Court of Appeals addressed this issue on direct appeal, and similarly determined that Idaho law does not require a limiting instruction unless one is requested by a party. *See State's Exhibit B-3*, at p. 4 (relying on I.R.E. 105[4] and *State v. Moore*, 965 P.2d 174, 183 (1998)). This Court finds nothing to the contrary in Idaho law. Petitioner cites only to cases from other jurisdictions. As the Idaho Court of Appeals noted, the Ninth Circuit requires a limiting instruction under such circumstances, *U.S. v. Halbert*, 640 F.2d 1000 (9th Cir. 1981), but the Idaho courts are not bound by Ninth Circuit law. Petitioner has not shown that Judge Morfitt's failure to give such an instruction sua sponte was the result of bias or prejudice, when no legal duty to give such an instruction existed and no party raised the issue before the jury began deliberating.

---

[4] I.R.E. 105 states: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added).

**MEMORANDUM ORDER - 21**

b.      *The judge failed to dismiss Mr. Prior and appoint new counsel before entertaining a motion for judgment of acquittal*

Petitioner asserts that Judge Morfitt's failure to remove Mr. Prior from the case and appoint new counsel before entertaining a motion for judgment of acquittal filed by Mr. Prior shows Judge Morfitt's bias against Petitioner.  When Petitioner requested that the Court dismiss Mr. Prior before sentencing, Judge Morfitt granted the request and reappointed the public defender's office.  Judge Morfitt required Mr. Prior to remain on the case only until another attorney appeared of record.  This is standard procedure to protect a defendant's interest so that a defendant is not left without counsel during the interim time period while new counsel is being appointed.

Petitioner also wanted his new attorney to file a motion for judgment of acquittal because Petitioner had filed a bar complaint against Mr. Prior, and Petitioner thought that the bar complaint would adversely affect Mr. Prior's performance.  Mr. Prior told the court that he filed the motion because there was a 14-day time limit for the motion.

No bias is shown by Judge Morfitt's entertainment of the motion for judgment of acquittal filed by Mr. Prior because of the time limit set by Idaho law.  After Judge Morfitt reappointed the public defender's office, that office conflicted the case out to Van Bishop, and then to Mr. Trunnell, who represented Petitioner in sentencing.  *See State's Exhibit* , at pp. 615-621.  Judge Morfitt additionally appointed the state appellate public defender (Paul Sonenberg) to aid Petitioner in his appeal.  *State's Exhibit A-1*, at pp.116-117.

**MEMORANDUM ORDER - 22**

There is nothing in Judge Morfitt's actions regarding these appointments of counsel that shows he was biased against Petitioner. Petitioner is complaining about standard state court procedures. The record reflects that Judge Morfitt heard and granted Petitioner's request for new counsel to represent him at sentencing, which was a benefit, not a detriment, to Petitioner. It was not logistically possible for new counsel to have filed the motion for judgment of acquittal because of the 14-day time deadline, and Petitioner has cited to no provision in the law for Judge Morfitt to have extended that time period and allowed a second motion by a new attorney unless the request to extend the time was made within the original 14-day time period. *See* I.C.R. § 29(c). No such request was made between the verdict on September 20, 2000, and October 4, 2000, the date the motion for judgment of acquittal was filed. Petitioner's oral request to extend the time period was made on November 13, 2000, well beyond the 14-day time period.

> c. *The judge appointed Van Bishop to represent Petitioner and did not do anything to disqualify him on Petitioner's later motion to disqualify and did not inquire into the alleged conflict*

On September 4, 2002, Petitioner filed his post-conviction relief petition and a motion for appointment of counsel. On December 5, 2002, Judge Morfitt appointed the public defender to represent Petitioner. On December 16, 2002, Petitioner filed a motion for appointment of conflicts counsel. Petitioner filed the same motion again on February 18, 2003. On June 24, 2003, Judge Morfitt issued his notice of intent to issue summarily dismiss the petition. On August 8, 2003, Judge Morfitt issued his order of partial

**MEMORANDUM ORDER - 23**

dismissal and notice of intent to summarily dismiss remaining claims, and on October 1, 2003, Petitioner's case was summarily dismissed for lack of merit.

Petitioner alleges that Judge Morfitt's bias was manifested by his failure to rule on Petitioner's December and February motions to replace Mr. Bishop as his conflict attorney before ruling on the merits of the post-conviction petition.  Petitioner relies on the post-conviction statute provision regarding appointment of counsel.  In *Charboneau v. State*, 102 P.3d 1108 (Idaho 2004), the Idaho Supreme Court explained that provision as follows:

> [A] needy applicant for post-conviction relief is entitled to court-appointed counsel unless the trial court determines that the post-conviction proceeding is frivolous. Idaho Code § 19-852(b)(3) sets forth the standard for determining whether or not a post-conviction proceeding is frivolous. It is frivolous if it is "not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense."

*Id*. at 1111 (internal citation omitted).  The decision to grant or deny a request for court-appointed counsel lies within the discretion of the district court.  *Fox v. State*, 934 P.2d 947 (Idaho Ct. App. 1997).  "When presented with a request for appointed counsel, the court must address this request before ruling on the substantive issues in the case."  *Id.* at 951.

In Petitioner's case, Judge Morfitt initially exercised his discretion to appoint counsel for Petitioner.  Klaus Wiebe was appointed.  *State's Exhibit C-1*, at p. 155. Because Wiebe had worked on the Rule 35 motion, and Petitioner was asserting that

**MEMORANDUM ORDER - 24**

Wiebe had been ineffective, Wiebe conflicted the case to Van Bishop.  *State's Exhibit C-2*, at p. 194-195.  Thereafter, Petitioner filed a motion to disqualify Bishop because of Petitioner's claim of ineffective assistance of counsel against Bishop in an earlier, unrelated criminal case.  Judge Morfitt did not entertain Petitioner's motion, and noted that Bishop did not ever file such a motion on Petitioner's behalf.

> In addressing this issue on post-conviction review, Judge Morfitt stated:

> The court found that Petitioner failed to produce any evidence of the prior criminal matter or Mr. Bishop's representation of him, nor has Petitioner explained why such evidence was not available.  Further, Mr. Bishop did not alert the Court as to any conflict of interest.  The court found that Petitioner failed to meet his burden of proof as to establishing bias on the trial court warranting disqualification for cause.

*State's Exhibit C-2*, at p. 295.  Petitioner has not demonstrated that he made an adequate showing of a conflict to the state court.

This Court concludes that  Judge Morfitt did what was required under the statute and case law – he appointed counsel for Petitioner.  However, counsel failed to act for Petitioner.  There is nothing in Idaho law requiring the judge to *ensure* that counsel is going to act for Petitioner once counsel is appointed.  Court finds nothing particular in this record that would show a bias in Judge Moriftt's failure to follow up on his original appointment of counsel for Petitioner.

 Petitioner also asserts that the judge's bias was manifested by his issuance of an order dismissing only some of the claims so that Petitioner would be tricked into appealing that order and miss his chance to appeal.  Petitioner also argues that the partial

**MEMORANDUM ORDER - 25**

dismissal order was procedurally incorrect, again, showing the judge's bias.  This

argument is unsupported by the law.

Idaho Code § 19-4906(b) allows the district courts wide discretion in disposing of

post-conviction petitions:

> When a court is satisfied, on the basis of the application, the answer or
> motion, and the record, that the applicant is not entitled to post-conviction
> relief and no purpose would be served by any further proceedings, it may
> indicate to the parties its intention to dismiss the application and its reasons
> for so doing. The applicant shall be given an opportunity to reply within 20
> days to the proposed dismissal. In light of the reply, or on default thereof,
> the court may order the application dismissed or grant leave to file an
> amended application or, direct that the proceedings otherwise continue.
> Disposition on the pleadings and record is not proper if there exists a
> material issue of fact.

Therefore, Judge Morfitt acted within his authority to enter a partial summary dismissal

and to call for additional briefing on the remaining issues.  This procedure allowed

Petitioner one additional opportunity to prove his claims.  There are not facts in the record

indicating that Judge Morfitt used this procedure to purposely trick Petitioner regarding

his appeal time.

> ### d.   The judge stated, "nor has any motion to that effect been filed"

On November 8, 2000, Judge Morfitt was made aware that he had been a

prosecutor 22 years earlier on one of Petitioner's prior felony cases which was to be used

as the basis of the persistent violator conviction.  On November 13, 2000, Judge Morfitt,

after giving himself and the parties a week to research the issue, determined that recusal

**MEMORANDUM ORDER - 26**

was not required.  On that date, he made the statement that recusal prior to sentencing was

not necessary, nor had any motion for recusal been filed.

In the post-conviction case, Petitioner asserted that this statement indicates Judge

Morfitt's bias.  However, the record does not reflect that Petitioner filed a motion for

recusal prior to December 7, 2000.  *See State's Exhibit C-1* (Post-Conviction Petition,

Exhibit 5(P)).  Petitioner asserts that he told his counsel to file such a motion, but that his

counsel did not.  *State's Exhibit C-2*, at p. 252.

As determined above, recusal was not necessary based on the facts in the record.

Because the record does not reflect that a motion to disqualify was filed prior to

November 13, 2000, it cannot be said that Judge Morfitt was untruthful in stating that no

such motion had been filed.  If Petitioner is attempting to make some other point

regarding this statement, it is not discernable from his briefing.  The Court concludes that

Petitioner has failed to show bias with this particular argument.

> e.     *The judge solicited the State's view on impartiality and recusal*

Petitioner asserts that Judge Morfitt showed his bias against Petitioner by allowing

the State's attorney to provide oral argument on the issue of recusal.  Petitioner has no

legal basis for this allegation.  It is good judicial practice, and an integral part of the

adversary system, that both sides be afforded an opportunity to be heard on the issues in a

**MEMORANDUM ORDER - 27**

case.  This was not an *ex parte* motion or issue; therefore, Judge Morfitt did not err in

soliciting the State's view on recusal.  This act does not show bias or prejudice, but that

Judge Morfitt simply wanted to gather all of the facts and hear arguments from both sides

before deciding this issue.

     *f.*  *Cumulative Effect*

   The Idaho Supreme Court has stated that, "in order to constitute legal bias or

prejudice, allegations of prejudice in post conviction and sentence reduction proceedings

must state facts that do more than simply explain the course of events involved in a

criminal trial."  *State v. Beam*, 766 P.2d 678, 685 (Idaho 1988) (internal punctuation and

citation omitted).  Under the civil counterpart to I.C.R. 25(b)(4), the Idaho Court of

Appeals has determined that "a judge is not disqualified from hearing the case on the

ground that he has made adverse rulings in the case."  *Liebelt v. Liebelt*, 870 P.2d 9, 13

(Idaho Ct. App. 1994).  Similarly, interpreting the federal counterpart to I.C.R. 25(b)(4),

the United States Supreme Court has observed that recusal is not necessary where the

petitioner's allegations of bias "consist of judicial rulings, routine trial administration

efforts, and ordinary admonishments (whether or not legally supportable) to counsel and

to witnesses,  . . . [a]ll occur[ring] in the course of judicial proceedings," and where the

judge did not rely "upon knowledge acquired outside such proceedings," and "did [not]

"display[] deep-seated and unequivocal antagonism that would render fair judgment

impossible.*"  Liteky v. U.S.*, 510 U.S. 540, 556 (1994).

**MEMORANDUM ORDER - 28**

Applying these principles, this Court concludes that Petitioner has not shown that Judge Morfitt "fail[ed] to conduct legal proceedings according to established rules and principles" or that he was biased or prejudiced against Petitioner or his case.  Because Petitioner has failed to make this showing, he has not shown that recusal was required.  Because recusal was not required, Petitioner has not shown cause for the procedural default of his claims.

## F.  Standard of Law Governing Actual Innocence to Excuse Procedural Default

If a petitioner cannot show cause and prejudice, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice."  *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  A miscarriage of justice  means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence,  *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995), supporting his allegations of constitutional error with new reliable evidence that was not presented at trial, *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence."  *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

**MEMORANDUM ORDER - 29**

If a petitioner brings forward new evidence not presented at trial[5] which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Upon such a showing, a petitioner may proceed with his claims, provided that his claim of actual innocence is accompanied by an assertion of nonharmless constitutional error at trial. *Id.*, 513 U.S. at 316.

## G.    Discussion of Petitioner's Assertions of Actual Innocence

Petitioner asserts that he is actually innocent. He supports his claim of actual innocence with the Affidavit of Ms. Urrea, who said that after the incident, Roa-Shaffer had the victim's wallet in her possession and gave it to Urrea to put it in the mail. *See State's Exhibit C-1 (Post-Conviction Petition), Exhibit 30/5A*. At trial, Roa-Shaffer and the victim testified that Banks took the wallet from the victim. The Urrea Affidavit was signed and notarized on June 13, 2001, two years after Petitioner's conviction.

The Court does not agree that the evidence presented by the Urrea Affidavit meets the high threshold to support an actual innocence gateway argument. Banks could have stolen the wallet from the victim, and then given it to Roa-Shaffer to dispose of. In addition, it also appears that Ms. Urrea is not a disinterested witness, but was Petitioner's

---

[5] Evidence need only be newly presented, not newly discovered. *Griffin v. Johnson*, 350 F.3d 956 (9th Cir. 2003).

**MEMORANDUM ORDER - 30**

girlfriend, which raises the issue of her personal bias in his favor. *See State's Exhibit A-3*, at p. 394-95.[6]

The *Schlup* standard for actual innocence specifies that "[t]o be credible" a gateway claim requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." 513 U.S. at 324. Here, while Petitioner's evidence may be "new," it is not reliable. It is not a "trustworthy eyewitness account," because the source of the information is Petitioner's girlfriend. Petitioner has not shown that in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S. at 327. Based on the foregoing standards of law, the Court concludes that the totality of the evidence does not support Petitioner's

---

[6] At trial, the following colloquy occurred during cross-examination of Roa-Shaffer:

| | |
|---|---|
| Q. (Atty. Prior): | And at no time after you called this cab did you have Mr. Allred's wallet; right? |
| A. (Roa-Schaffer): | No. |
| Q. | And at no time subsequent to that did you go up to Dwayne's girlfriend and day, "Hey, I want to give Dwayne this wallet"? |
| A. | No, that's not true at all. |
| Q. | You never handed her the wallet; right? |
| A. | I never before saw her. |
| Q. | And if she were to testify that you handed her the walled, she would be lying? |
| A. | She would be lying. |

State's Exhibit A-3, at pp. 394-395.

**MEMORANDUM ORDER - 31**

actual innocence argument.[7]  Therefore, Petitioner may not rely upon this ground to excuse his procedural default.

As an additional actual innocence argument, Petitioner also asserts that there were no fingerprints detected on a beer bottle found at the crime scene that was discussed at trial as the instrument used to knock the victim unconscious.  There was conflicting evidence at trial regarding the beer bottle.  The victim stated that he was fighting and rolling around on the ground with Petitioner, and then he "blacked out"  *State's Exhibit A-3*, at pp.202-03.  On cross-examination, the victim speculated that Roa-Schaffer could have hit him on the back of the head while he struggled with Petitioner.  *Id*. at pp. 226-27.  Roa-Schaffer denied hitting the victim, and stated that she remained in the car, and, at one

---

[7]  In addition, in a letter written to Mr. Banks in response to Banks' bar complaint against John Prior, Prior wrote:

> You stated that I told Mrs. Urrea that she was not needed as a witness. Response:  I made a dozen attempts to contact Mrs. Urrea by phone and in person and made arrangements for my process server to locate her.  I was unable to locate her.  In addition we discussed this very matter shortly before your trial that I was having a difficult time locating her.  In addition, the prosecuting attorney wanted her at the trial and advised me that the Sheriff's Office was having a difficult time locating her.  On the day fo trial, she showed up at court and when I approached her she ran away.  I followed her down three sets of stairs where she proceeded to run into the men's bathroom and hid in one of the men's bathroom stalls.  When I finally talked to her she advised me that "she would not lie for Dwayne and she was afraid to testify."  I had a conversation with the prosecuting attorney who then advised me shortly before trial the Sheriff's Office received an anonymous phone call advising Dwayne Banks committed this crime.  The officer who received the call was prepared to testify that the voice was of Roccio Urrea. If you recall Mr. Banks we discussed in great detail why we should not call Mrs. Urrea.  You agreed that it would be better not to call Mrs. Urrea as a witness.

*State's Exhibit C-1, Post-Conviction Petition, Exhibit 5(q).*  While a letter is not admissible evidence, the Court anticipates that Mr. Prior would testify in manner consistent with his letter if called as a witness at an evidentiary hearing.

**MEMORANDUM ORDER - 32**

point, saw Banks run to the car to get something and then stand over the victim.  *State's Exhibit A-3*, at pp. 388-89.  Petitioner testified that, as he "wrestled" with the victim, the victim suddenly just rolled off him, "kind of like []in slow-motion."  *Id.* at p. 493.

That the beer bottle did not bear the fingerprints of Roa-Schaffer or Petitioner does not clarify the issue of who hit the victim on the back of the head, or even whether he was hit with beer bottle, given the above testimony.  In addition, the striking of the victim with the beer bottle or some other object is *not* an essential element of robbery, and thus cannot be relied upon to show that Petitioner is actually innocent of robbery.[8]

Petitioner also asserts that the following items show his actual innocence.  First, he argues that the photographs of the beer bottle should have been suppressed; that Mike Wagoner, a police investigator, should not have been permitted to speculate at trial that there was blood on or around the bottle; and that the prosecutor's misstatements of evidence regarding the beer bottle in closing argument should not have gone uncorrected.  *See State's Exhibit A-3*, at p. 407, et seq.

The foregoing items are not "new evidence" and cannot satisfy the *Schlup* standard.  *See House v. Bell*, 126 S.Ct. 2064, 2078 (2006) ("Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record.").  In addition, these items do not go to the elements of the robbery charge, and

---

[8] Petitioner was also initially charged with battery, but that charge was dismissed pursuant to a motion to dismiss.  *See State's Exhibit A-1*, at p. 65.

**MEMORANDUM ORDER - 33**

thus do not show that Petitioner is actually innocent of robbery. Therefore, Petitioner has not met the exception to allow his procedurally defaulted claims to be heard.

## II.

## OTHER PENDING MOTIONS

### A.   Petitioner's Motion to Expand the Record (Docket No. 34)

Also pending before the Court is Petitioner's Motion to Expand the Record (Docket No. 34). Petitioner wishes to bring forward evidence of the pro se motions he filed, including a motion for withdrawal of counsel, a motion for appointment of counsel, and a motion for hearing. Petitioner wishes to allocate cause for the default of his claims to Dennis Benjamin, post-conviction appellate counsel. However, the default lies in Petitioner's premature filing of the notice of appeal, and failure to file a timely notice of appeal after the final order, which occurred prior to Benjamin's appointment. Even if Benjamin could be faulted, the ineffective assistance of counsel on post-conviction review cannot constitute cause. *See Poland v. Stewart*, 169 F.3d at 588. Therefore, the records that Petitioner seeks to include are not relevant to a showing of fault, and, hence, his Motion to Expand the Record shall be denied.

### B.   Petitioner's Motion for Disclosure (Docket No. 35)

Petitioner has also filed a Motion for Disclosure (Docket No. 35). The Court will presently deny this motion in light of the large number of claims that have been

**MEMORANDUM ORDER - 34**

dismissed.  Petitioner may renew this motion, but must specifically limit it to only the remaining claims (9, 10, 11, 12, 17, 18, 19, 20 and Supplemental Claim 1).

**C.      Petitioner's Motion for an Evidentiary Hearing (Docket No. 41)**

Petitioner has also requested an Evidentiary Hearing (Docket No. 41). The Court is mindful that Petitioner was not afforded an evidentiary hearing in state court.  However, the Court wishes to review the parties' briefing on the merits of the case before it determines whether the claims can be resolved as a matter of law, or whether an evidentiary hearing is required.  Therefore, the Motion shall be denied without prejudice.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Docket shall reflect that this case is no longer stayed, but is active, in accordance with Docket No. 25.

IT IS FURTHER HEREBY ORDERED that Respondent's Motion for Partial Summary Dismissal (Docket No. 32) is GRANTED in part and DENIED in part, as follows:  Claims 1, 2, 3, 4, 5, 6, 7, 8, 13, 14, 15, 16, 21, 22, 23 and Supplemental Claim No. 4 are DISMISSED; Plaintiff may proceed to the merits of Claims 9, 10, 11, 12, 17, 18, 19, 20, and Supplemental Claim 1.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to Expand the Record (Docket No. 34) is DENIED.

**MEMORANDUM ORDER - 35**

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Disclosure (Docket No. 35) is DENIED without prejudice, given the large number of claims that have been dismissed.  Petitioner may renew this motion, but must specifically limit it to only the remaining claims (9, 10, 11, 12, 17, 18, 19, 20, and Supplemental Claim 1).

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Evidentiary Hearing (Docket No. 41) is DENIED without prejudice.

IT IS FURTHER HEREBY ORDERED that Respondent shall file a motion for summary judgment addressing all remaining claims no later than **January 16, 2007.** Petitioner shall have thirty (30) days to respond, and Respondent shall have fifteen (15) days to reply.

DATED:  **September 28, 2006**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM ORDER - 36**